PAUL HELLMAN, INC., a Corporation,
Plaintiff in Error,

v.

O. E. REED, Defendant in Error.

No. 38835.

Supreme Court of Oklahoma.

Nov. 7, 1961.

**392**

LeRoy Blackstock, John Robert Seelye, Tulsa, for plaintiff in error.

Dickey & Richard, Tulsa, for defendant in error.

PER CURIAM.

Plaintiff's action is for damages allegedly sustained by reason of the defendant's breach of warranty in selling him a Buick automobile on which there was a balance due under a conditional sales contract and which lien was not paid. Service of summons was not had on Charles M. Serviss, a defendant in the trial court, and he did not enter an appearance. From verdict of a jury in favor of plaintiff and upon which judgment was entered, the defendant Paul Hellman, Inc., has perfected its appeal. The parties will be referred to as they appeared in the trial court.

### Pleadings

It is alleged that on May 20, 1957, plaintiff entered into a written contract with defendant by and through its sales manager, Charles M. Serviss, who was acting within the scope of his employment; that plaintiff agreed to purchase and defendant agreed to sell one 1956 Buick automobile for the sum of $2,350, the agreement to be completed upon payment by plaintiff of the sum of $1,900 in cash and the transfer of title and possession of one Ford automobile of the value of $450; that upon surrender of the Ford and payment of the $1,900 the defendant surrendered the Buick automobile to the plaintiff and furnished a title thereto in the name of the plaintiff which showed the car to be free and clear of encumbrances. That although the defendant warranted the Buick to be free and clear of encumbrances, the same was encumbered by reason of a conditional sales contract in favor of Stone Bros., Inc., and General Motors Acceptance Corporation. That on September 20, 1958, General Motors Acceptance Corporation repossessed the Buick automobile under the lien of the conditional sales contract and plaintiff has been damaged in the sum of $2,350.

The answer of Paul Hellman, Inc., is in the form of a general denial with specific denial that Charles M. Serviss acted as agent, servant, employee or sales manager of the corporation or that he was acting within the scope of his employment and authority. That Paul Hellman, Inc., did not participate in the transaction; that it received no benefit from the transaction and the acts and deeds of Charles M. Serviss were his individual acts and deeds and not the acts and deeds of the corporation.

Reply was in the form of a general denial.

### Facts

Plaintiff testified he answered an advertisement for the sale of a car in which pay-

ments were to be taken. up by the purchaser. The telephone listed was that of Paul Hellman, Inc.; that he went to the place of business which was a sales lot and saw the Paul Hellman, Inc., sign which advertised mobile-homes, cars and boats; that he talked to Charles M. Serviss, who said he was sales manager for Paul Hellman, Inc., about purchasing the car and Serviss told him the purchaser would have to take up the deferred payments on the car; that he told him he would not be interested in taking up payments but wanted to purchase a car free of encumbrances; that he would give his Ford car in trade and would pay the balance of the purchase price in cash. After making several trips to the sales lot, an agreement was reached and he signed a contract with defendant to purchase the Buick for a consideration of $2,350, payable $1,900 in cash and the transfer of the Ford car of the agreed value of $450; that the contract was signed, Paul Hellman, Inc., by Charles M. Serviss, for the defendant; The contract provided, among other things as follows: "For value received, I hereby bargain, sell, grant and deliver unto Paul Hellman, Inc., Charles M. Serviss Sales Manager, one Ford year 1951 * * *". The contract was typed by another employee of Paul Hellman, Inc., and signed in the office of Paul Hellman, Inc. The contract shows the selling price to be $2,350, payable $1,900 cash and trade in value of Ford to be $450. All spaces with reference to deferred payments were crossed out. After completion of the contract by the payment of the money and the exchange of the cars, Charles M. Serviss applied for, obtained and delivered a new certificate of title to the Buick, naming plaintiff as the owner and showing the car subject to "Nil" lien. On cross examination the plaintiff testified he never saw, or talked to Paul Hellman; that he did not check the records of Tulsa County to ascertain if there were any liens against the Buick.

Testimony on the part of the defendant was that the Buick was the personal property of Charles M. Serviss and at the time the sale was made, certificate of title was in his name. The Blue Book value of the Buick in the latter part of 1958 was; wholesale, $1,315, retail, $1,735 and worth $100 more with automatic transmission. Paul Hellman testified that Charles M. Serviss was employed as salesman; that he was not sales manager; and did not sell cars; that he (Hellman) owned no interest in the Buick and got no benefit from the sale and the sign had nothing on it about cars or boats. He further testified he closed all credit deals but Serviss could handle a cash deal himself if there was no trade in. On cross examination he admitted he had a sign which stated: "We trade for trailors, cars and boats." Testimony was also produced showing intermittent payments on the balance due under the conditional sales contract and when the car was repossessed there was still due thereon $1449.89.

### Proposition I

The defendant contends there was a lack of proof showing that Serviss was acting as agent for defendant and the trial court erred in not sustaining a demurrer to the evidence.

Plaintiff testified the telephone number in the advertisement was the defendant's number; when he got to the sales lot the sign said Paul Hellman, Inc., handled mobile homes, cars and boats; the car was on the lot; Charles M. Serviss was the only person on the lot, although there was a woman employee in the office; Serviss appraised plaintiff's Ford car; he stated the selling price of the Buick; he agreed on the final deal; Serviss had the contract prepared by another employee of defendant in the defendant's office with defendant's own forms and equipment and the contract was signed Paul Hellman, Inc., by Charles M. Serviss, Sales Manager.

In Boston v. Causey, 206 Okl. 251, 242 P.2d 712, 713, we held:

"Agency is a question of fact to be established by the evidence and where the verdict of the jury is reasonably sustained by such evidence a judgment

entered thereon will not be disturbed on appeal."

■ From the evidence, the jury was fully justified in finding that Serviss was the duly authorized agent of defendant and the trial court did not err in submitting this question to the jury.

## Proposition II

■ Defendant contends that the certificate of title cannot form the basis of a cause of action for breach of warranty. The plaintiff's petition is not based on any warranty contained in the certificate of title, but on a breach of warranty caused by the fraudulent representations that the Buick car was being transferred free of all encumbrances. The certificate of title caused to be issued to plaintiff by Serviss contains the legend that the car had "NIL" encumbrances and was in furtherance of the fraudulent representations made in the contract which shows on its face there was no encumbrances on the car at the time it was transferred. The statement "there are no liens against the car" is placed thereon from the sworn statement of the person making the assignment, in this case, the defendant corporation, or its agent, Serviss; otherwise the Tax Commission would have had no information from which to make the statement. The Certificate of Title was just one more link in the chain events showing the fraudulent actions of the defendant, acting through its agent Serviss.

## Proposition III

Defendant contends that as between two innocent persons, one of whom had the means to protect himself but did not, the person so failing should bear the loss.

In this connection defendant cites R–F Finance Corp. v. Summers, 168 Okl. 179, 32 P.2d 312; and Ponder v. Beeler Motor Company, 176 Okl. 385, 55 P.2d 1010.

■ Although the above proposition may be the law, we seriously doubt if such rule can be applied in favor of the defendant in the instant action. The plaintiff refused to trade for the car and take up deferred payments as they became due. He was then offered the car, according to the contract itself, without any liens against it. He paid the full contract price to the agent of the defendant and instead of paying the lien in full, the agent made sporadic payments on the balance due, and failed and neglected to pay the entire amount. Upon receiving notice that there was an unpaid balance, the plaintiff immediately notified the defendant in writing and it thereupon became the duty of the defendant to satisfy the lien in full and protect the plaintiff. The defendant through its agent contracted that the car was free of all encumbrances; had the time and apparently the means to satisfy the lien, and having failed to so do, it is the one to bear the loss.

## Proposition IV

Defendant contends it was fundamental error for the trial court to fail to give an instruction defining an express warranty. Although the trial court, in its instructions, did not specifically define the term "express warranty" the following instruction was given:

"You are instructed that if you find first, that Charles M. Serviss was acting as the agent of the defendant corporation, as otherwise defined in these instructions, and you further find from all of the evidence in this case that there existed a warranty, either expressed or implied, that the Buick automobile involved was free from encumbrances, and that the plaintiff relied upon said warranty and suffered detriment thereby, then your verdict should be for the plaintiff to the extent of his damages.

"You are further instructed that if you find from the evidence in this case that the defendant, Charles M. Serviss, was not the agent of the defendant corporation as otherwise defined in these instructions, or that there was no warranty, either expressed or implied, then your verdict should be for the defendant."

No objection to this instruction was voiced by the defendant nor does the record show the defendant made any request, either written or oral, for an instruction defining an express warranty nor was the failure of the trial court to give such an instruction challenged in the motion for a new trial. We have heretofore held instructions which fairly submit the issues raised by the pleadings and evidence, which instructions are not challenged by a motion for new trial will not justify reversal of a cause, if the instructions as a whole, reasonably state the applicable law of the case. City of Blackwell v. Murduck, 206 Okl. 466, 244 P.2d 817. We have carefully reviewed the instructions as given, and find they fairly submitted the issues raised by the pleadings and the evidence and as a whole reasonably state the law applicable to the case.

## Proposition V

Defendant contends that the trial court erred in giving instruction 12 for the reason the instruction did not state the proper measure of damages and does not even use the correct amounts as reflected by the evidence.

This instruction stated that if the jury found for the plaintiff then the verdict shall not be less than the amount of the mortgage indebtedness which is $1,450, and not more than $1,845, the value of the car.

In connection with the proper measure of damages it is the position of the defendant that it was the duty of plaintiff to pay the balance due under the conditional sales contract, thereby holding the amount of damage to that amount. The plaintiff did not contract the indebtedness; the indebtedness was on the car when the sale thereof was made; the purchase price, including the indebtedness against the car was paid to defendant by the plaintiff and it then became the duty of the defendant, under the sale agreement, to pay such indebtedness and secure a release of the lien. This the defendant did not do. When the plaintiff was advised the indebtedness had not been paid and the holder of the lien demanded payment or surrender of the car, the plaintiff immediately notified defendant thereof and demanded payment of the balance due. Notification to the defendant was by letter dated September 10, 1958, and the car was repossessed on September 20, 1958. Having notified defendant that the lien against the car had not been paid and satisfied, the plaintiff had taken all steps necessary on his part to minimize the damages. The defendant having offered no evidence of any other duty on the part of the plaintiff in connection therewith, the plaintiff was, upon repossession of the car, entitled to damages in the amount of the indebtedness or the value of the car, whichever was the greater. He was entitled to be placed in the same position he would have occupied, had the defendant paid the indebtedness and secured a release of the lien. See Sackett v. Rose, 55 Okl. 398, 154 P. 1177, L.R.A. 1916D, 820; Carter Oil Co. v. Holloway, 130 Okl. 272, 267 P. 274; Consolidated Cut Stone Co. v. Seidenbach, 181 Okl. 578, 75 P.2d 442; and Staner v. McGrath, 174 Okl. 454, 51 P.2d 795.

With reference to the instruction not using the correct amounts as reflected in the record, it is the position of defendant that the figures used are not in the record. However, the amount of the mortgage indebtedness of $1,450 as used in the instruction, is the same amount defendant used in his requested instruction No. 4, which was not given by the trial court. Having used this figure, and having requested the trial court to give his instruction containing this same figure, the defendant cannot now complain that the figure was slightly less. The amount of the indebtedness evidently was not considered by the jury as that body found the plaintiff sustained damages in the sum of $1,845, the greater amount. As to the figure $1,845, the value of the car was shown to be $1,835 and it is the theory of the defendant there was a typographical error in the preparation of the instruction and in view of the value as shown by the

evidence, the judgment should be reduced by $10. Whatever error there may have been in the use of these figures, such error is harmless, especially in view of the agreement of the plaintiff that the judgment should be reduced to $1,835.

Upon the filing of remittitur by plaintiff in the sum of $10 within ten days from date of mandate, the judgment of the trial court is affirmed; otherwise reversed and remanded for a new trial.

Affirmed subject to remittitur, otherwise reversed for new trial.

The Court acknowledges the aid of Supernumerary Judge, N. S. CORN, in the preparation of this opinion. After a tentative opinion was written, the cause was assigned to a Justice of this Court. Thereafter, upon report and consideration in conference, the foregoing opinion was adopted by the Court.