**In re Samuel C. CROSBY, aka Sam C. Crosby, aka Sam Crosby Trucking, aka Crosby Transportation, Debtor.**

**TRANSPORT ACCEPTANCE CORPORATION, Plaintiff,**

**v.**

**Samuel C. CROSBY, Interstate Contract Carriers Corporation, Carrier Rentals, Incorporated, Defendants.**

**Bankruptcy No. 3–81–00120.
Adv. No. 3–81–0597.**

United States Bankruptcy Court, E. D. Tennessee.

April 13, 1982.

L. Anderson Galyon, Knoxville, Tenn., for plaintiff.

Richard Stair, Jr., Knoxville, Tenn., for defendant, Samuel C. Crosby.

James S. MacDonald, Knoxville, Tenn., for defendants, Interstate Contract Carriers Corp. and Carrier Rentals Inc.

## MEMORANDUM

CLIVE W. BARE, Bankruptcy Judge.

This adversary proceeding presents a priority conflict between a secured creditor

who perfected a security interest in a truck titled in Oklahoma by noting its lien on a certificate of title and a secured creditor who took possession of the vehicle prior to such perfection.

## I

Plaintiff, Transport Acceptance Corporation (hereafter "TAC"), and defendant, Interstate Contract Carriers Corp. (hereafter "ICC"), are secured creditors of defendant, Samuel C. Crosby (hereafter "debtor"). Defendant, Carrier Rentals, Inc. (hereafter "Carrier"), is a subsidiary of ICC.

Plaintiff and debtor were parties to a retail installment contract dated August 5, 1977, whereby debtor was indebted to plaintiff. The indebtedness was secured by the pledge of certain commercial vehicles as collateral. In March of 1980, at debtor's request, plaintiff refinanced debtor's contract account and substituted as collateral a 1975 Chevrolet tractor for another vehicle which was released from the security agreement. The 1975 Chevrolet tractor is the subject of the present controversy.

On March 28, 1980, plaintiff caused its security interest in the tractor to be noted on a certificate of title issued by the State of Oklahoma. Prior thereto, the tractor had been inspected by plaintiff in Iowa (Jim Morrison deposition, p. 11).

On October 1, 1979, some six months *prior* to granting plaintiff a security interest in the tractor, the debtor had executed a "Tennessee Security Agreement" (Exhibit 7), granting to Carrier Rentals a security interest in the tractor (Answer of ICC and Carrier to plaintiff's Amended Complaint).

On or about January 29, 1980, Carrier took possession of the tractor in Knoxville, Tennessee, pursuant to an alleged default by debtor (Answer of ICC and Carrier to plaintiff's Amended Complaint). Carrier, on March 25, 1981, executed an Oklahoma "Repossession Affidavit," Exhibit 10.

ICC and Carrier have been in possession of the tractor since January 29, 1980.

On January 23, 1981, the debtor filed a petition in bankruptcy under Chapter 13 of the Code. Thereafter, the debtor moved to convert the case to a case under Chapter 7, 11 U.S.C. § 1307, and on May 20, 1981, an order for relief under Chapter 7 was entered. TAC initiated the present adversary proceeding on July 13, 1981. As heretofore indicated, at issue are the respective rights of TAC and Carrier in the vehicle.

TAC contends that the determination of priorities is governed by the laws of Oklahoma. Carrier insists the determination is controlled by the laws of the State of Tennessee.

## II

T.C.A. § 47–9–102(1), in pertinent part, provides that, except as otherwise provided in § 47–9–103, Article 9 applies as far as concerns any personal property within the jurisdiction of this state to any transaction (regardless of its form) which is intended to create a security interest in personal property.

T.C.A. § 47–9–302(1) enacts that, with exceptions detailed therein, a financing statement must be filed to perfect all security interests. Exception (1)(a) refers to "collateral in possession of the secured party under § 47–9–305, . . . ." That section provides that a security interest in "goods" may be perfected by the secured party's taking possession of the collateral. "Goods" includes all things which are movable at the time the security interest attaches. T.C.A. § 47–9–105(1)(f).

Tennessee Code Annotated § 47–9–103(4) provides that

"if personal property is covered by a certificate of title issued under a statute of this state or any other jurisdiction which requires indication on a certificate of title of any security interest in the property as a condition of perfection, then the perfection is governed by the law of the jurisdiction which issued the certificate."

On October 1, 1979, the first critical date involved in this controversy, the debtor granted ICC a security interest in the vehicle. Ex. 7. This transaction came about when the debtor purchased the vehicle from

one Laney and ICC paid off the existing lien against the vehicle held by GMAC. Somehow the debtor, however, obtained a "clean" title certificate which did not disclose ICC's security interest.

The second critical date is January 29, 1980. On that date ICC took possession of the vehicle, the debtor being in default under the terms of the October 1, 1979, security agreement. Thus, on the latter date, ICC perfected its security interest in the vehicle by taking possession of the collateral. T.C.A. § 47–9–305. The record is not clear as to when the vehicle was taken to Oklahoma, if, in fact, it was ever taken to that state. In any event, it was some four months after ICC took "possession" of the vehicle that TAC emerged as the holder of a security interest on a certificate of title issued by the State of Oklahoma.

Sec. 47–9–305 permits a security interest to be perfected by transfer of possession when the collateral is "goods . . . ." As under the common law of pledge, no filing is required by Article 9 to perfect a security interest when the secured party has possession of the collateral.

 T.C.A. § 47–9–302(3)(b) states that the "filing" provisions of Article 9 do not apply to a security interest in property subject to a statute which requires indication of a security interest on a certificate of title. This section, therefore, does not exclude perfection by possession pursuant to T.C.A. § 47–9–305.[1]

Sec. 305 contemplates that other methods of perfection may be utilized. "The security interest may be otherwise perfected as provided in this chapter before or after the period of possession by the secured party." T.C.A. § 47–9–305.

This court concludes that the law of Tennessee controls the transaction entered into between ICC and the debtor on October 1, 1979. T.C.A. § 47–9–102(1). Further, this court concludes that the law of Tennessee controls the perfection of a security interest by ICC on January 29, 1980. T.C.A. § 47–9–102; § 47–9–305. This court further concludes that a security interest in a vehicle may be perfected by possession of the collateral, T.C.A. § 47–9–305; that ICC perfected its security interest on January 29, 1980, when it took possession of the collateral; and that ICC's perfected security interest is superior to the rights of TAC, T.C.A. § 47–9–312(5)(b),[2] TAC's rights arising subsequent to the perfection of ICC's security interest.

This Memorandum constitutes findings of fact and conclusions of law, Bankruptcy Rule 752.

---

1. Oklahoma law seems to the contrary: "[A] security interest in a vehicle as to which a certificate of title may be properly issued . . . shall be perfected *only* when a lien entry form . . . and the existing certificate of title, if any, or application for a certificate of title and manufacturer's certificate of origin . . . are delivered to the Oklahoma Tax Commission or one of its licensed agents." (Emphasis added). Okla.Stat.Ann.Tit. 47 Sec. 23.2b(A)(1).

2. "*Priorities among conflicting security interests in the same collateral—*

(5) In all cases not governed by other rules stated in this section . . . priority between conflicting security interests in the same collateral shall be determined as follows:

(b) in the order of perfection . . . ." T.C.A. § 47–9–312(5)(b).