In re Samuel C. CROSBY, a/k/a Sam C. Crosby, a/k/a Sam Crosby Trucking, a/k/a Crosby Transportation, Debtor.

TRANSPORT ACCEPTANCE CORPORATION, Plaintiff,

v.

Samuel C. CROSBY, Interstate Contract Carriers Corporation, Carrier Rentals, Incorporated, Defendants.

Bankruptcy No. 3–82–312.

United States District Court, E. D. Tennessee, N. D.

Aug. 12, 1982.

L. Anderson Galyon, III, Knoxville, for plaintiff.

Richard Stair, Jr., James S. MacDonald, Knoxville, for defendants.

MEMORANDUM

ROBERT L. TAYLOR, District Judge.

Transport Acceptance Corp. (Transport) appeals from a judgment of the United States Bankruptcy Court for the Eastern District of Tennessee. The Bankruptcy Court held that defendants-appellees, Interstate Contract Carriers Corp. and its subsidiary Carrier Rentals, Inc. (hereinafter referred to collectively as Carrier) have a security interest in a 1975 Chevrolet tractor superior to Transport's interest. Bkrtcy., 19 B.R. 436. The issue on appeal is whether Carrier's security interest in the tractor is superior to the security interest of Transport. The answer to the question depends upon whether Oklahoma law or Tennessee law controls the perfection of the security interest in the tractor. We hold that Oklahoma law controls.

The facts of the case are not in dispute. On October 1, 1979, Samuel C. Crosby, the debtor in bankruptcy, executed a Tennessee Security Agreement, granting a security interest in the 1975 tractor to Carrier. The tractor was originally titled in Tennessee.

Carrier, however, transferred the title to Oklahoma for tax purposes. Due to an oversight, the Oklahoma title was issued without notation of Carrier's lien. The debtor therefore received a clear title. He then defaulted under the agreement with Carrier. On or about January 29, 1980, Carrier took possession of the tractor in Knoxville, Tennessee. Carrier executed an Oklahoma Repossession Affidavit on March 25, 1981, over a year after taking possession.

The debtor and Transport executed a retail installment contract on August 5, 1977. The debtor pledged several commercial vehicles as collateral for the debt. In March 1980, Transport refinanced the account. Transport released one vehicle from the agreement, and the 1975 Chevrolet tractor was substituted as security. On March 28, 1980, Transport caused its interest in the tractor to be properly noted on the Oklahoma certificate of title. This was approximately two months after Carrier had repossessed the tractor.

On January 23, 1981, the debtor filed a petition in bankruptcy under Chapter 13 of the Bankruptcy Code. Transport filed an adversary proceeding on July 13, 1981, claiming rights in the Chevrolet tractor. The Bankruptcy Court held that Tennessee law controlled the perfection of the security interests in the tractor. That Court then found that Carrier's possession gave it priority under Tennessee law.

The transactions between the debtor and Transport and Carrier bear a substantial relation to Tennessee. The security agreements were entered into here and Carrier repossessed the tractor in Tennessee. We therefore look initially to the Tennessee Commercial Code for the controlling legal principles. Tenn.Code Ann. §§ 47–1–105, 47–9–101. The Code at § 47–9–102 provides as follows:

Policy and scope of chapter.—(1) Except as otherwise provided in § 47–9–103 on multiple state transactions and in § 47–9–104 on excluded transactions, this chapter applies so far as concerns any personal property and fixtures within the jurisdiction of this state:

(a) to any transaction (regardless of its form) which is intended to create a security interest in personal property or fixtures including goods, . . .

Section 47–9–103(4) provides the following exception:

Notwithstanding subsections (2) and (3), *if personal property is covered by a certificate of title issued under a statute of* this state or *any other jurisdiction which requires indication on a certificate of title of any security interest in the property as a condition of perfection, then the perfection is governed by the law of the jurisdiction which issued the certificate.* (emphasis added).

An Oklahoma certificate of title covered the tractor during the term of Carrier's and Transport's security interests. Under Oklahoma law the sole method of perfection of a security interest in a motor vehicle is by notation of the interest on the certificate of title. Okla.Stat. tit. 47, § 23.2b. The Oklahoma Motor Vehicle Statute provides as follows:

Any person creating a security interest in a vehicle that has been previously registered in the debtor's name and on which all taxes due the state have been paid shall surrender the certificate of title to the secured party. The secured party shall have the duty to record the security interest as provided in this section and shall, at the same time, obtain a new certificate of title which shall show the secured interest on the face of such certificate of title.

*Id.* § 23.2b(B)(5). The title is filed and indexed,

. . . . so that at all times it will be possible to trace the title to the vehicle designated therein, identify the lien entry form, and the names and addresses of secured parties, or their assignees, so that all or any part of such information may be made readily available to those who make legitimate inquiry of the Commission as to the existence or nonexistence of security interest in the vehicle.

*Id.* § 23.2b(C).

The Oklahoma version of the Uniform Commercial Code provides as follows:

Compliance with a statute or treaty described in subsection (3) of this section is equivalent to the filing of a financing statement under this Article, and a security interest in property subject to the statute or treaty can be perfected only by compliance therewith . . .

Okla.Stat. tit. 12A § 9–302(4). Subsection (3) refers to statutes which require indication on a certificate of title of security interests in the property. *Id.* This would include the Oklahoma Motor Vehicle Act, title 47 § 23.2b.

■ The Oklahoma provision requiring notation as a condition of perfection is the type of statute contemplated by Tenn.Code Ann. § 47–9–103(4). The Tennessee Code requires deference to the Oklahoma provision in this case. The § 47–9–103(4) exception applies even though relevant transactions take place primarily in Tennessee and the property is in Tennessee. Otherwise, the exception would be meaningless. Parties may not agree that the law of another state, including Tennessee, shall govern, in contravention of this Tennessee choice of law rule. Tenn.Code Ann. § 47–1–105. Transport is the only secured party who indicated its interest on the certificate of title. Because it was the only party to perfect under the Oklahoma rules, Transport's rights in the tractor are superior to the rights of Carrier.

We note that this case is substantially similar to the recent Sixth Circuit case, *In Re: Angier,* 684 F.2d 397 (6th Cir., 1982). In *Angier* the Court construed a provision of the Michigan Uniform Commercial Code that is identical to the Tennessee certificate of title perfection rule, Tenn.Code Ann. § 47–9–103(4). The Sixth Circuit reaffirmed an earlier holding that the provisions of this section, Mich.Comp.Laws § 440.9103(4), "plainly supercede" other provisions of the code "when a foreign jurisdiction issues a certificate of title." *In Re: Angier,* at 399. The Bankruptcy Court did not have the benefit of *Angier* or the earlier decision, *In re Paige,* 679 F.2d 601 (6th Cir., 1982), when it rendered its decision in the instant case on April 13, 1982. As we now hold, the language of the Tennessee statute mandates a consistent interpretation under Tennessee law.

■ Carrier contends that it acquired all of the debtor's interest in the truck by taking possession on January 28, 1980. Pursuant to this argument, the debtor could not have granted Transport a security interest in March 1980. The Oklahoma perfection requirements would therefore not apply to the case.

Contrary to Carrier's assertion on appeal, the Bankruptcy Court did not find that Carrier's mere possession deprived the debtor of all interests in the collateral. The Bankruptcy Court only held that Carrier's prior possession would give it priority under Tennessee perfection rules. Transport perfected its interest on March 28, 1980. As of that date, Carrier had not initiated judicial foreclosure proceedings or caused a public or private sale pursuant to the security agreement or the Tennessee Commercial Code. Neither had Carrier given written notice to the debtor that it proposed to retain the collateral in satisfaction of the obligation. *See* Tenn.Code Ann. § 47–9–505. The debtor retained the clear Oklahoma title issued in his name. On these facts, the debtor could transfer an interest in the tractor to Transport in March 1980. Accordingly, Carrier's position in this regard is without merit.

For the foregoing reasons, it is ORDERED that this case be, and the same hereby is, remanded to the Bankruptcy Court for entry of judgment that the rights of plaintiff-appellant, Transport Acceptance Corp., are superior to the rights of defendants-appellees, Interstate Contract Carrier Corp. and Carrier Rentals, Inc., in the 1975 Chevrolet tractor.

Order Accordingly.