In re Bobby Lee DANIELS a/k/a Bobby L. Daniels and Shirley Rose Daniels d/b/a Daniels Marine, Inc., Debtors.

**UNION BANK & TRUST COMPANY, Plaintiff,**

v.

**Kenneth McDONALD, Trustee, R. D. Wilson, Lee A. Garland and American Bank of Commerce, McAlester, Defendants.**

Bankruptcy No. 81–01584.
Adv. No. 81–0272.

United States Bankruptcy Court,
W. D. Oklahoma.

Sept. 2, 1982.

Kenneth I. Jones of Eagleton, Nicholson, Jones & Blaney, Oklahoma City, Okl., for plaintiff.

Carl W. Parkhurst, McAlester, Okl., for the defendant, American Bank of Commerce, McAlester.

---

## MEMORANDUM ORDER

DAVID KLINE, Bankruptcy Judge.

### STATEMENT

Union Bank & Trust Company's complaint asks for the delivery of the debtor's motor home in the possession of American Bank of Commerce, McAlester. Defendant American filed an objection to the order of delivery. Both banks urge superior perfected purchase money security interests in said vehicle. Thereafter defendant R. D. Wilson answered and filed a third party complaint against Lee A. Garland. Garland answered. Discovery was begun and a pre-trial conference was held. At pre-trial this matter was bifurcated so that the only issue the court heard was whether American Bank of Commerce or Union Bank & Trust had the first lien position. After a full evidential hearing, the matter was taken under advisement and briefs were requested.

### ISSUE

Does a motor vehicle purchase money security interest perfected under the provisions of the Oklahoma Uniform Commercial Code [12A Okla.Stat.] maintain its priority after the 1979 passage of Title 47 Okla.Stat. (1981) § 23.2b where such perfection does not appear on the face of the title certificate as required by the 1979 statute.

### FACTS

1. On November 18, 1977, R. D. Wilson and Gene Bouse purchased a Pace Arrow Motor Home (Ser. # TO44377S6349) and financed the purchase with the plaintiff. The security agreement was signed on November 21, 1977 and the UCC–1 was filed November 28, 1977. Mr. Lee A. Garland was also a part owner in the vehicle although his name did not appear on the title certificate.

2. On or about April 23, 1979, Lee A. Garland, without plaintiff's prior consent, purchased R. D. Wilson's interest in said motor home. The plaintiff did receive notice of the sale after the fact.

3. On July 1, 1979, the new Oklahoma Motor Vehicle lien Statute [47 Okla.Stat. (1981) § 23.2b] went into effect.

4. Lee A. Garland made all payments to the plaintiff from the time of the transfer until February, 1981. The plaintiff attempted on a number of occasions to get Garland to sign a new security agreement.

5. The initial certificate of title, issued November 21, 1977, showed plaintiff's outstanding lien. Sometime between that date and January 17, 1980, plaintiff's lien was removed from the certificate of title without its knowledge or consent. However, the UCC–1 filed in Oklahoma County was still of record.

6. On or about February 23, 1981, Lee A. Garland sold the motor home to the debtors, Bobby Lee Daniels and Shirley Rose Daniels, without plaintiff's knowledge or consent.

7. On February 23, 1981, the debtors financed the vehicle with the defendant American Bank of Commerce, McAlester, a lien entry form being filed on February 24, 1981, pursuant to the 1979 motor vehicle title law.

8. The debtor continued to make payments to the plaintiff until August, 1981, after which he defaulted.

9. The plaintiff first learned of the transfer to the debtor after the filing of the bankruptcy petition on September 14, 1981.

### LAW

#### 1979 Motor Vehicle Statute

1) 47 Okla.Stat. (1981) § 23.2b A.1. states:

"... a security interest, as defined in section 1–201 of Title 12A of the Oklahoma Statutes, in a vehicle as to which a certificate of title may be properly issued by the Tax Commission shall be perfected only when a lien entry form, which shall be upon a form prescribed by the Commission, and the existing certificate of title, if any, or application for a certificate of title and a manufacturer's certificate of origin containing the name and

address of the secured party and the date of the security agreement and the required fee are delivered to the Oklahoma Tax Commission or one of its motor license agents ...  The filing provisions of Title 12A of the Oklahoma Statutes, including, but not limited to, Section 9–302, shall not be applicable to perfection of security interests in vehicles as to which a certificate of title may be properly issued by the Tax Commission, except as to vehicles held by a dealer for sale or lease and except as provided in subsection D of this section."

Subsection D provides:

"Any security interest in a vehicle properly perfected prior to July 1, 1979, may be continued as to its effectiveness or duration as provided by Sections 9–401(3) and 9–403(3) of Title 12A of the Oklahoma Statutes, or may be terminated, assigned or released as provided by Sections 9–404, 9–405 and 9–406 of Title 12A of the Oklahoma Statutes, as fully as if this section had not been enacted, or, *at the option of the secured party, also be perfected under this section*, and if so perfected, the time of perfection under this section shall be the date said security interest was originally perfected under the prior law...." (emphasis supplied)

### Applicable pre-1979 Statute

2) 12A Okla.Stat. (1981) § 9–311 states:

"The debtor's rights in collateral may be voluntarily or involuntarily transferred ... notwithstanding a provision in the security agreement prohibiting any transfer ... but the interest so transferred is subject to the creditor's security interest if it is properly perfected ..."

3) 12A Okla.Stat. (1981) § 9–312(4) provides:

"A purchase money security interest in collateral other than inventory has priority over a conflicting security interest in the same collateral or its proceeds if the purchase money security interest is perfected at the time the debtor receives possession of the collateral or within ten (10) days thereafter."

### General Rule

■ Generally, where a security interest is validly perfected under the requisite law at the time, perfection continues under any subsequent changes in statutes, so long as those subsequent changes allow for continued perfection under the prior statutes; and under such circumstances, the security interest is prior in right to all subsequent filings.  See 12A Okla.Stat.Ann. § 9–312(4).  *In Re Manufacturers Credit Corp.*, 441 F.2d 1313 (CA 3 1971);  *In Re Covey*, 470 F.Supp. 1048 (D.C.Vt.1979);  *Maley v. National Acceptance Corp.*, 259 F.Supp. 841 (D.C.Ga. 1966);  *In Re Crosby*, 19 B.R. 436, 33 U.C.C. Rptr. 1127 (Bkrtcy.E.D.Tn.1982);  *In re Bundy*, 15 B.R. 819, 33 U.C.C.Rptr. 727 (Bkrtcy.S.D.N.Y.1981).

### Two innocent parties

In *Bankers Investment Company v. Humphrey*, 369 P.2d 608, 609 (1962) the Oklahoma Supreme Court observed:

"In *Paul Hellman, Inc. v. Reed* [366 P.2d 391 (Okl.) ], ... we held as between two innocent parties, one of whom had the means to protect himself but did not, the law favors the one who was not at fault.  In *Al's Auto Sales v. Moskowitz* [203 Okl. 611, 224 P.2d 588], ... we said where one of two innocent parties must suffer through the act or negligence of a third party, the loss should fall upon the one who by his conduct created the circumstances which enabled the third party to perpetrate the wrong or cause the loss."

### CONCLUSION

■ For security interest perfection, the 1979 motor vehicle title statute requires a lien entry form to be sent to the Oklahoma Tax Commission or a Tag Agent, and mandates that such lien appear upon the face of the certificate of title.  But subsection D of such law recognizes that a security interest filed prior to the new Act's effective date need not be shown upon the title certificate.

Although plaintiff Union Bank had notice of the motor vehicle transfer after it took place the plaintiff had no legal obligation to re-perfect or take any action as to the collateral. And so long as the party who signed the initial security agreement remained a resident of the county in which the perfection was originally made, the original perfection remained valid. See 12A Okla.Stat. (1981) § 9–401(1)(a). Specifically, such filing is valid until four months after said debtor, as distinguished from the collateral, moves to another county within the state. 12A Okla.Stat. (1981) § 9–401(3). Read *Georgia Pacific Corp. v. Lumber Products Co.*, 590 P.2d 661 (Okl. 1979).

The defendant Wilson, the listed security agreement debtor, was at all times a resident of Oklahoma County until November, 1981, two months after the filing of this bankruptcy petition. And once the bankruptcy petition was filed the plaintiff had no obligation to take action. Read 11 U.S.C. § 362(a)(4) and 11 U.S.C. § 546(b). (See Legislative History note following § 546(b) of the *1979 Collier Pamphlet Edition of the Bankruptcy Code*).

The American Bank of Commerce was chargeable with the knowledge that a pre-1979 enforceable security interest could be outstanding; and as harsh as the result appears, as between the two secured claimants, the Union Bank is entitled to prevail.

Accordingly, it is ORDERED and ADJUDGED that:

1) Plaintiff Union Bank & Trust Co. has a prior, perfected security interest in the subject collateral.

2) The American Bank of Commerce, McAlester turn to plaintiff Union Bank & Trust Company the subject motor vehicle or the sale proceeds therefrom.