In re Floyd Ray HUGHEN, d/b/a Cliff's Van and Storage, Debtor,

PAUL ARPIN VAN LINES, INC. a Rhode Island Corporation, Plaintiff,

v.

Ray BABB, trustee for debtor, and Floyd Ray Hughen, d/b/a Cliff's Van and Storage, Defendants.

Bankruptcy No. Bk–82–01522.
Adv. No. 82–0345.

United States Bankruptcy Court, W.D. Oklahoma.

April 8, 1983.

**14**

Kenneth I. Jones, Jr. and James S. Matthews, Jr., Oklahoma City, Okl., for plaintiff.

Ray K. Babb, Jr., Oklahoma City, Okl., for the defendant-trustee.

Norman E. Reynolds, Oklahoma City, Okl., for debtor.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

RICHARD L. BOHANON, Bankruptcy Judge.

### STATEMENT OF THE FACTS AND ISSUES

The material facts in this controversy have been stipulated by the parties. The dispute involves a 1975 International Harvester Van, S/N 10672EHA30136. The van was originally owned by Paul Arpin Van Lines and used and stored primarily in Rhode Island.

In April of 1979, Paul Arpin Van Lines, Inc., and the debtor entered into an agreement providing the debtor would have possession of the vehicle and handle the traffic needs of plaintiff-Paul Arpin Van Lines, Inc., within Oklahoma. The agreement between the plaintiff and debtor was evidenced by a promissory note and conditional sales contract. Arrangements were that a percentage of the commissions earned by the debtor would be deducted and credited to the agreed upon value of the van. In

October of 1981, Paul Arpin made a further advance of $4,000 to the debtor which brought the total indebtedness to $13,-311.81. This second transaction was also evidenced by a promissory note and conditional sales contract. At all times relevant to the instant controversy Arpin held the Rhode Island Certificate of Title and no Oklahoma Certificate of Title was ever obtained by either party. Arpin appears on the Rhode Island title certificate as "owner" and a blank appears in the designated places for lien holder notation. No lien entry form UCC Financing Statement was ever filed in connection with the transaction in question.

The parties agree that the conditional sales contracts constituted valid security agreements and that the 1975 Van is the collateral for the debt. Further, it is agreed that the debtor has defaulted by failing to make the contractual payments. The debtor claims no interest or equity in the Van.

On August 12, 1982, the debtor filed a voluntary petition under Chapter 7 in this District. Subsequently, the defendant-trustee succeeded to all interest of the debtor and is now in possession of the Van and refuses to deliver possession of the vehicle to Arpin relying upon the trustee's avoiding powers. 11 U.S.C. § 544.

Each party has moved for Summary Judgment and their positions have been briefed. The sole question before the Court is whether the plaintiff, Paul Arpin Van Lines had a *perfected* security interest as to the trustee.

Arpin contends that, under Oklahoma Law, its security interest in the Van was substantially perfected since its name, as owner, appears on the only certificate of title issued. As a result, it argues, no creditor or purchaser could have been misled into concluding that the debtor owned the entire interest in the Van. Therefore, it urges an inquiry concerning the title would have led to the discovery of its security interest, or at least the inability of the debtor to produce sufficient evidence of

title. Under these circumstances, Arpin concludes it substantially complied with the perfection requirements under Oklahoma law even though it did not literally follow procedures set out in 47 O.S. 1981 § 23.2b.

The trustee argues that Arpin's security interest was never perfected under Oklahoma law and therefore he is entitled to avoid it. He points to the fact that no lien entry form or UCC Financing Statement was ever filed in connection with the transaction. Moreover, he asserts that Arpin made no attempt to perfect the security interest under the applicable law.

## CONCLUSIONS OF LAW

 There is no question that the laws of Oklahoma and not Rhode Island will control in deciding this controversy.[1] It is now a well established rule in Oklahoma that motor vehicle certificates of title are but documents of convenience rather than documents of ownership. *In re Foster*, 611 P.2d 232 (Okl.1980); *Medico Leasing Co. v. Smith*, 457 P.2d 548 (Okl.1969). Yet, effective July 1, 1979, the Oklahoma Legislature created a new system of perfection of security liens in vehicles by enacting the Oklahoma Certificate of Title Statute, 47 O.S. 1981 § 23.2b.[2] The effect of this change in the statute was to separate motor vehicle transactions from other secured transactions under the Uniform Commercial Code (UCC). This new scheme is now the exclusive means for perfection of se-

curity interest in motor vehicles. *In re Foster, supra* at 234.

This adoption of UCC concepts and principles may be significant in aid of interpreting the Certificate of Title Statute under facts different from the case at bar. However, the record here indicates that provisions of the UCC will be of no assistance since Arpin has failed to perfect for reasons other than the title notation.

Section 23.2b(A)(1) provides that perfection of a security interest in vehicles, other than those held by a dealer for sale or lease occurs only when:

"... a lien entry form ... and the existing certificate of title, if any, or application for a certificate of title and manufacturer's certificate of origin containing the name and address of the secured party and the date of the security agreement and the required fee *are delivered to the Oklahoma Tax Commission or one of its motor license agents.*" (emphasis added)

 The liberal construction provisions of the UCC regarding perfection of security interest do not totally abrogate the clear procedural requirements of the Certificate of Title Statute. Permitting the Title Statute to be interpreted from the purview of notice filing concepts of the UCC is not intended to protect those who simply ignore the safeguards established by the legislature under the Title Statute.

---

1. The parties have not raised the issue of what law will control as to the issues presented. However, 12A O.S.1981 § 9–103.1 makes clear that even though Arpin may have perfected its security interest in Rhode Island, such perfection lapsed by the time the debtor filed its petition in bankruptcy such that Oklahoma law would govern perfection or non-perfection after the vehicle had been removed to this jurisdiction for four (4) months following perfection in Rhode Island. In either regard, however, Rhode Island's Certificate of Title Statute § 31–3.1–19 et seq. is substantially the same as Oklahoma's statute. Although we do not directly address the issue, the results reached here would likely be the same under either statute.

2. § 23.2b Perfection of security interest
A. 1. Except for a security interest in vehicles held by a dealer for sale or lease, ... a security

interest ... in a vehicle as to which a certificate of title may be properly issued by the Tax Commission shall be perfected only when a lien entry form ... and the existing certificate of title, if any, or application for a certificate of title and manufacturer's certificate of origin containing the name and address of the secured party and the date of the security agreement and the required fee are delivered to the Oklahoma Tax Commission or one of its motor license agents.
....
....
....
7. The Commission or one of its motor license agents shall have the duty to record the lien upon the face of the certificate of title issued at the time of registering and paying all fees and taxes due on such vehicle.

**16**

Indeed, to benefit from the "minor errors which are not seriously misleading" language of 12A O.S.1981 § 9–402(8) a secured party under § 23.2b must at least have attempted to meet the minimum requirement of delivering to the Tax Commission a lien entry form or application for title. To hold otherwise would render § 23.2b meaningless. The title certificate must be available at the Tax Commission not only for purposes of notice, but also the title is necessary to ascertain if, in fact, an error is "minor" or "misleading". Thus, § 9–402(8) presupposes compliance with the procedural requirements of § 23.2b for one seeking to perfect a security interest in vehicles. *See In re Hillstrom Shipbuilding Co., Inc.*, 5 B.R. 87, 91 (Bkrtcy.D.Or. 1980).

It is stipulated that Arpin never filed a lien entry form or UCC Financing Statement in connection with the transaction and no certificate of title in Oklahoma was ever secured. In the absence of a certificate of title a security interest in a vehicle cannot be perfected in Oklahoma. This situation was contemplated in the case of *In re Circus Times, Inc.*, 641 F.2d 39 (1st Cir.1981). The Court did not reach the issue since the title certificate documents had been properly submitted to the designated authorities. However, in addressing the question of "whether a security interest in a vehicle can be perfected in the absence of a certificate of title" the Court stated this question "would ... require a negative answer...." 641 F.2d at 45. The case of *In re Coors of the Cumberland, Inc.*, 19 B.R. 313 (Bkrtcy.M.D.Tenn. 1982) is distinguished since under Tennessee law, notation of a security interest on the title certificate was all that's required as no public record elsewhere was mandated.

Absent statutory provisions to the contrary, perfection of a security interest in vehicles assumes compliance with filing or registration procedures under applicable statutes. Arpin totally ignored the procedural requirements of § 23.2b by not delivering any document to the Tax Commis-

sion. This omission on the part of Arpin cannot be construed as a "minor error" within the meaning of 12A O.S. 1981 § 9–402(8). Therefore, Arpin does not have a perfected security interest as to the trustee.

Since Arpin holds an unperfected security interest in the Van, its position is inferior to the Code trustee's lien creditor status pursuant to 11 U.S.C. § 544(a).

Accordingly, the Summary Judgment is granted in favor of the trustee. It is so ORDERED.

Pursuant to B.R. 752 this Memorandum Decision and Order constitutes the findings of fact and conclusions of law.

Judgment will be entered separately.