In re The CHIEF FREIGHT LINES COMPANY, Debtor.

The CHIEF FREIGHT LINES COMPANY, and The Official Creditors' Committee of the Chief Freight Lines Company, Plaintiffs,

v.

STRICK FINANCE COMPANY and Strick Corporation, Defendants.

Bankruptcy No. 81–01096.
Adv. No. 82–0361.

United States Bankruptcy Court,
N.D. Oklahoma.

Feb. 14, 1984.

Sam G. Bratton, II, of Doerner, Stuart, Saunders, Daniel & Anderson, Tulsa, Okl., Peter D. Wolfson of Booth, Lipton & Lipton, New York City, and William T. Burke, Jr., of Burke, Gilliland & Schroeder, Dallas, Tex., for plaintiffs.

James M. Sturdivant and Teresa B. Adwan, of Gable & Gotwals, Tulsa, Okl., and Harold S. Novikoff, of Wachtell, Lipton, Rosen & Katz, New York City, for defendants.

## ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT

MICKEY D. WILSON, Bankruptcy Judge.

Plaintiffs, the Official Creditors' Committee of Chief Freight Lines Company and debtor Chief Freight Lines Company, bring this motion for partial summary judgment as to the first two counts of their complaint pursuant to Bankruptcy Rule 7056 and Rule 56 Fed.R.Civ.Proc. The first count of plaintiffs' complaint seeks to avoid security interests held by defendants, Strick Corporation and Strick Finance Company, which are alleged to be unperfected under the Certificate of Title provisions of Motor Vehicle License and Registration Act, Okla. Stat. tit. 47 § 23.2b (1980). The second count of plaintiffs' complaint seeks to recover money paid to defendants as a voidable preference under 11 U.S.C. § 547. For the reasons set forth below, this Court has determined that partial summary judgment should be granted as to the first count of plaintiffs' complaint, but denied as to the second count of its complaint.

### I.

### Background

In early 1979, Strick Corporation, (hereinafter "S.C.") a Pennsylvania corporation which manufactures and sells highway trailers which are used by trucking companies, (hereinafter "S.C.") contracted to sell two hundred highway trailers to the debtor, Chief Freight Lines Company (hereinafter "C.F.L.") for cash on delivery. C.F.L. was to finance the purchase of these trailers through a local bank. After C.F.L. took possession of a portion of these trailers, S.C. delivered the Manufacturer's Certificates of Origin (hereinafter "MCO") for all two hundred trailers to C.F.L. In late 1979, an employee of C.F.L. presented the MCOs for the two hundred trailers and applications for Oklahoma Certificates of Title to the Sperry Tag Agency, a vehicle licensing agent for the Oklahoma Tax Commission. Sperry Tag Agency, through its agent Pauline Anderson ("tag agent Anderson"), issued original Certificates of Title for these vehicles and delivered them to C.F.L. No liens were recorded on the Certificates of Title nor were lien entry forms submitted by any entity to the tag agent.

Following standard operating procedure for the issuance of Certificates of Title, tag agent Anderson, having delivered the original Certificates of Title to C.F.L., unencum-

bered, proceeded to keep two copies of the Certificates of Title, one for the tag agency files, and one to be forwarded to the Oklahoma Tax Commission—Motor Vehicle Division ("Motor Vehicle Division").[1] Before the Certificates of Title were forwarded to the Motor Vehicle Division by the Sperry Tag Agency, C.F.L. discovered that local financing could not be procured. The unavailability of local financing resulted in S.C. agreeing to finance the highway trailer purchase through its financial subsidiary Strick Finance Company (hereinafter "S.F. C."), in exchange for a security interest in all of the highway trailers. C.F.L. agreed to "take whatever steps were necessary" to execute, on the behalf of S.C., the security interests in the two hundred highway trailers. S.C. "completely" relied on C.F.L. to perfect the liens. (deposition of Shapiro, p. 45.)

Thereafter, a C.F.L. employee telephoned Sperry Tag Agency and informed tag agent Anderson that financing changes required that each of the two hundred Certificates of Title have a lien in favor of S.C. recorded thereon. Tag agent Anderson alleges that she contacted the Oklahoma Tax Commission—Motor Vehicle Division and was verbally informed that perfection of a security interest for an out-of-state creditor did not require a lien entry form. (deposition of Anderson, p. 18). Anderson further alleges that she was instructed by the Motor Vehicle Division to get "who the lien was made by", so she would know how to correctly record it on the Certificates of Title which were still in the Sperry Tag office, but which were destined for the Motor Vehicle Division. Tag agent Anderson told the C.F.L. employee that S.C.'s lien could, at this point, be perfected by: (1) inserting "Strick Corporation", its address, and the date of the lien on the Motor Vehicle Division's copies of the Certificates of Title which remained at the tag office; and (2)

inserting the same on the two hundred original Certificates of Title that were in C.F. L.'s possession. Tag agent Anderson requested and received a written notation from C.F.L. detailing: (1) the lienholder name; (2) the lienholder address; and (3) the date of the lien. Subsequently, tag agent Anderson inserted this information on the Certificates of Title in her possession and an employee of C.F.L. inserted this information on the original Certificates of Title. No lien entry form was submitted by any entity nor was a lien entry fee collected.

Facts also show that C.F.L. filed its voluntary petition for relief on October 1, 1981; that C.F.L. has continued operation of its business as debtor in possession; that within ninety days prior to the debtor's bankruptcy petition the debtor made three payments, the total of which is $168,565.46, on the contract indebtedness. Said payments made are as follows: August 1, 1981, payment of $56,643.57; September 1, 1981, payment of $56,419.69; October 1, 1981, payment of $56,430.20. The plaintiffs allege these payments are preferential transfers under 11 U.S.C. § 547.

## II.

### Discussion

■ Plaintiffs' motion for partial summary judgment as to the first count of their complaint is based on the undisputed fact that defendants failed to file lien entry forms and failed to pay lien entry fees as expressly required by Okla.Stat. tit. 47 § 23.2b for perfection of security interests in vehicles. There is no question that the trailers at issue are vehicles[2] as defined under applicable Oklahoma law. Plaintiffs argue that the failure to file the lien entry form and pay the required fee prevents defendants S.F.C. and S.C. from holding a

1. Copies of newly issued Certificates of Title are sent by Sperry Tag Agency to the Motor Vehicle Division twice a month.

2. "Vehicles" are defined in Okla.Stat. tit. 47 § 23.1 as: "Every device, in, upon, or by which

any person or property is or may be transported or drawn, except devices moved by human or animal power, when not used upon stationary rails or tracks."

perfected security interest as a matter of law. The Court agrees.

The Certificate of Title provision of the Motor Vehicle License and Registration Act is the "exclusive means" in Oklahoma for the perfection of security interests in vehicles. *See Arpin Van Lines, Inc. v. Babb* (*In re Hughen*), 38 B.R. 13 at 15 (Bkrtcy. W.D.Okl.1983), *citing McConnico v. General Motors Acceptance Corporation* (*In re Foster*), 611 P.2d 232, 234 (Okl.1980). By enacting the Certificate of Title provision found in Okla.Stat. tit. 47 § 23.2b, the Oklahoma Legislature created a new system for perfection of security interests in vehicles. *Woodson v. Ford Motor Company* (*In re Cook*), 637 P.2d 588, 589 (Okl.1981). Both the Certificates of Title provisions and the Oklahoma Uniform Commercial Code specifically exempt perfection of security interests in vehicles from the filing provisions of the Uniform Commercial Code. The Certificate of Title provision, Okla.Stat. tit. 47 § 23.2b(A)(1), provides in pertinent part: "The filing provisions of Title 12A of the Oklahoma Statutes . . . shall not be applicable to perfection of security interests in vehicles as to which a certificate of title may be properly issued by the Tax Commission. . . ." Title 12A of the Oklahoma statute § 9–302(3) provides:

(3) The filing of a financing statement otherwise required by the article is not . . . effective to perfect a security interest in property subject to:

\* \* \* \* \* \*

(b) a statute of this state which provides for central filing of, or which requires indication or delivery for indication on a certificate of title of, such security interests in such property . . .

\* \* \* \* \* \*

(4) Compliance with a statute . . . described in subsection (3) of this section is equivalent to the filing of a financing statement under this article, and a security interest in property subject to the statute . . . can be perfected only by compliance therewith. . . .

The statutory language of the Certificate of Title provision is clear and unambiguous as to how and when a security interest in a vehicle is to be perfected and where, as here, the language of a statute is clear and unambiguous "a court must construe a statute as written and where language is plain and unambiguous, a court should give effect to the law as written." *In re Jackson,* 268 F.Supp. 434, 441 (E.D.Mo.1967). Perfection of a security interest in a vehicle under the Certificate Title provision occurs upon the delivery of four items to the Oklahoma Tax Commission or one of its vehicle licensing agents: (1) an existing certificate of title or an application for a certificate of title; (2) a lien entry form; (3) the manufacturer's certificate of origin; and (4) the required lien entry fee. Okla.Stat. tit. 47 § 23.2b(A)(1) provides:

[A] security interest . . . in a vehicle as to which a certificate of title may be properly issued . . . *shall be perfected only* when [1] a lien entry form . . . and [2] the existing certificate of title . . . or application for a certificate of title and [3][a] manufacturer's certificate of origin containing the name and address of the secured party and the date of the security agreement and [4] the required fee *are delivered* to the Oklahoma Tax Commission or one of its motor license agents. (emphasis added)

Simply put, mere delivery of the correct papers to the correct state office constitutes perfection. *See* K. Meyers, Oklahoma City University School of Law—Uniform Commercial Code Institute, *Title Certificate Perfection, Choice of Law and Interstate Problems.* The perfection of security interests in vehicles under the Certificate of Title provision begins from the date of execution of the lien entry form:

[i]f the lien entry form, the required . . . lien filing fee and the certificate of title or [the] application for the certificate of title and the manufacturer's certificate of origin are delivered to the Commission or motor license agent within ten (10) days after the date of the lien entry form . . . otherwise, perfection . . . begin[s] from the date of the delivery [of these four

items] to the Commission or motor license agent. Okla.Stat. tit. 47 § 23.2b(A)(2).

The Certificate of Title statute requires the secured party to accomplish perfection through delivery of the appropriate papers to the appropriate office. Okla.Stat. tit. 47 § 23.2b(A)(2) provides: "the secured party shall deliver the lien entry form and the required . . . lien filing fee . . . with the certificate of origin to the Commission or one of its motor license agents." Okla.Stat. tit. 47 § 23.2b(A)(5) further states: "the secured party shall have the duty to record security interest. . . ."

Under the present facts, defendants failed to comply with the express statutory requirements for perfection. Defendants did not deliver the MCOs or the original Certificates of Title from the debtor; defendants did not submit lien entry forms; defendants did not pay the lien entry filing fees; defendants did not effect "delivery" of the required documents to the tag agent. Instead, defendants relied totally on the debtor to accomplish the perfection actions that are statutorily mandated to be accomplished. The defendants' failure to follow the steps required for perfection—which under Okla.Stat. tit. 47 § 23.2b are the singular responsibility of the secured party—is fatal to their alleged perfection of security interests in the two hundred trailers and the proceeds therefrom.[3] For security interest perfection under the Certificate of Title provision of the Motor Vehicle License and Registration Act, a lien entry form, a manufacturer's certificate of title or an application for certificate of title *must be delivered* to the Oklahoma Tax Commission or one of its motor license agents. *See Union Bank & Trust Company v. McDonald (In re Daniels)*, 22 B.R. 871, 873 (Bkrtcy.W.D.Okl.1980) (for perfection of security interests in vehicles, a lien entry form must be sent to Oklahoma Tax Commission or tag agent). Indeed, the Oklahoma Supreme Court has referred to Okla.Stat. tit. 47 § 23.2b as the "lien entry form statute." *Woodson v. Ford Motor Credit Company (In*

*re Cook)*, 637 P.2d 588, 590 (Okl.1981). The Oklahoma Legislature has enunciated specific requirements for the perfection of security interests in vehicles and these clear, unambiguous legislative dictates must be followed.

Defendants argue that they, as the secured party, should not bear the risk of improper filing via the avoidance of their security interest, because tag agent Anderson's erroneous advice as to the proper filing procedure "caused" them to not follow the statutory mandates. Defendants rely on *McMillin v. First National Bank & Trust (In re Fowler)*, 407 F.Supp. 799, 803 (W.D. Okl.1975), which held that the mistake of a state official charged with administering procedure does not defeat a creditor's secured interest as long as the creditor's conduct did not lead to the filing officer's error. *Fowler* is clearly distinguishable on its facts, for in that case the filing clerk received and authenticated the properly delivered lien entry form that was required by statute; however, the filing clerk misindexed the lien entry form. Under the present facts no lien entry form ever existed, much less was delivered. The allegation that the tag agent's erroneous advice "caused" the defendant's security interest to be unperfected makes no difference, even if defendants were in fact innocent, because the Supreme Court of Oklahoma has recognized that "[a]s between two innocent parties, one of whom had the means to protect himself but did not, the laws favors the one who was not at fault", *Paul Hellman, Inc. v. Reed*, 366 P.2d 391, 392 (Okl. 1962), and "[w]here one of two innocent parties must suffer through the act or negligence of a third person, the loss should fall upon the one who by his conduct created the circumstances which enabled the third party to perpetuate the wrong or cause the loss". *Al's Auto Sales v. Moskowitz*, 203 Okl. 611, 614, 224 P.2d 588, 591 (1950) (citation omitted); *see also Union Bank & Trust Company v. McDonald (In re Daniels)*, 22 B.R. 871, 873 (Bkrtcy.W.D.Okl.1982). The

---

**3.** It is indicated that a portion of the trailers have been sold and the proceeds therefrom are

held by the parties awaiting this court's decision in this matter.

defendants' reliance on the debtor to perfect the security interests and the defendants' failure to follow the statutory requirements led to the circumstances which enabled tag agent Anderson to give erroneous advice as to the requirements of perfection, which in turn "caused" defendants' security interests to be unperfected. It is well recognized that a state officer's interpretation of a statute "must be reasonable, and in accordance with, subordinate to, and not in conflict with, statutory provisions." 67 C.J.S. *Officers* § 190, at 635 (1978) (footnotes omitted). The Certificate of Title statute explicitly requires a lien entry form, a lien entry filing fee, an application for a Certificate of Title or an existing Certificate of Title, and an MCO to be delivered to the Oklahoma Tax Commission or a motor license agent. Defendants had the duty to perfect the security interests as provided by statute, and were required by law to investigate the limits of the tag agent's authority. No contributory error of the tag agent is sufficient to excuse the defendants' failure to perfect the security interest as provided by statute.

Plaintiffs seek summary judgment to count two of their complaint, which said Count is in the nature of recovery of payments made on the loans within ninety (90) days next preceeding the filing of the petition seeking relief under § 547 of the Code. This cause of action is now viable by virtue of the Court's ruling as to count one. In defendant's answer filed July 9, 1982, essential elements of the preferential transfer are denied with an affirmative defense set forth by the allegation of the application of § 547(c)(2). Defendant's brief filed herein on April 27, 1983, addresses this question asserting therein the question of the insolvency of the debtor ninety (90) days preceeding the filing of the petition and further asserting the affirmative defense as set forth in (c)(2) of § 547. This matter is only addressed in a cursory manner by plaintiffs' brief.

Thus substantial questions of fact both to prove the elements of the preferential transfer as well as the affirmative defenses alleged exist for this Court to determine upon proper receipt of evidence, and by virtue thereof plaintiff's motion for summary judgment as to count two must be denied. *See In Re Curtis, d/b/a Curtis Oil Company,* 38 B.R. 364 at 368–370 (Bkrtcy. N.D.Okl.1983); *Broderick Wood Products Company v. United States,* 195 F.2d 433, 436 (10th Cir.1952); *Avrick v. Rockmont Envelope Company,* 155 F.2d 568, 573 (10th Cir.1946).

### III.

### Conclusion

In conclusion and for the above-stated reason, S.F.C. and S.C. do not have perfected security interests in the two hundred trailers and the proceeds therefrom. Therefore, defendants' interest is inferior to plaintiffs' lien creditor status pursuant to 11 U.S.C. §§ 544, 548, 550. The partial summary judgment as to count one is hereby granted, and plaintiff's right, title and interest in and to the trailers, or the proceeds therefrom, are superior to the right, title and interest of the defendants, and the liens are preserved for the benefit of the estate under 11 U.S.C. § 541(a)(3). Plaintiff's motion for partial summary judgment as to count two is denied.

AND IT IS SO ORDERED.